Good afternoon, everyone. On the five-case calendar, two cases are being submitted today on the briefs without oral argument. They are Appeals No. 06-3418, Moore v. Veterans Administration, and Appeal No. 07-3069, Brooks v. Department of Air Force. We'll hear argument first in Appeal 05-5065, J.G.B. Enterprises Inc. v. United States. Ms. Cohen, good afternoon. Welcome. Please proceed. May I please report, we respectfully request that this Court reverse the decision of the Court of Federal Claims holding that the government could not offset monies owed by Capital City against payment made pursuant to Contract 2508. The Court below erroneously held that the government cannot exercise its well-established right of set-off. The restatement is contrary to what you're saying, right? That's correct. The restatement does say that claims of defense cannot be exercised against a third-party beneficiary. I don't see any cases that you cited that are inconsistent with the restatement. The Schneider case, a Supreme Court case, states, quote, the promisor may assert against the beneficiary any defense. Defense. How is this a defense? It's a defense in the sense that it's an affirmative defense to J.G.B.'s claim. Well, I don't follow that. If you have a right of offset, it seems like that requires, as a prerequisite, cross-claims. And therefore, it seems like the offset device is a way of not a defense. First of all, there have been a number of cases that have referred to the right of set-off as a defense. For example, a man of the United States, 178, could have claimed 121, called the right of set-off one of defendant's defenses, among other defenses argued in that case. Also, Fidelity and Casual Company of New York. Well, wait a minute. The fact that in dicta or otherwise, some case by some court may have used the word defense doesn't resolve the problem I'm trying to get your help on. I don't understand how a right of offset can rest on a defense as opposed to a claim. It seems to me it necessarily rests on a claim. I don't care how many times you can find some court that may say defense. You've got to be able to, in a lawyer-like way, show that it really is a defense. I.e., an affirmative defense, not a claim. Also, based upon last month's dictionary definition of affirmative defense, our defense here of set-off applies. The dictionary says, a defendant's assertion of arguments that, if true, will compete plaintiff's claim, even if the allegations in the complaint are true. Here, we're saying it's true that Jay Degree, in fact, did not receive the full amount of the payment because we set off some of it against the money owed on the other contract. A pretty good chunk of it, actually. Yes, that's correct. Most of it. Most of it. Right. Now, one of my problems with your position, I think, is that Judge Miller made some findings, which seem like factual findings that are very damaging to your case, it seems to me, and they circle around and are captured, I think perhaps best, at page 20 of his opinion, in which he says, the only reasonable interpretation of the record mandates a finding that the government intended to modify the contract to assure JGB of payment so JGB would ship the hose assemblies that were urgently needed by payment. I take it he means full payment, not, you know, $0.20 on the dollar. That is not clear from the record, certainly. We agree that the judge found that there was some agreement to assure JGB to get payment, but there was nothing in the record that states that that would be full payment or that that payment would not be subject to it. So you think JGB would have been happy with $0.20 on the dollar or whatever it was as payment for its hose? No. Surely not. I mean, the judge says payment, and I take it that's a shorthand way of saying to be paid for what it was producing, which is full payment. Well, that's the issue in the case, so you can't just state it as a conclusion and say, therefore, I have to win, now I'll sit down. You've characterized the restatement as misleading, quote, misleading, which I find to be kind of an extraordinary way of looking at the restatement,   that's contrary to what the restatement says. You've got some language that you rely on, which doesn't do much for me, but in terms of a holding where a third-party beneficiary has been subject to a claim arising out of another contract, I don't see it. Lewis is not such a case in the Supreme Court. Schneider is not such a case. I looked at your cases. I don't find a single case that allows a claim arising out of some other contract or arrangement to be used as an offset against a third-party beneficiary. I would agree with that, that there's no other case exactly on point. Well, then how can you possibly say that the restatement is misleading when there's no case that supports you? Because a combination of cases supports our position. First, the Schneider case that talks about claims and defenses. Wait a minute. Where does the Schneider case talk about claims and defenses? Well, the Schneider case specifically refers only to defenses. Well, that's kind of important. And the fact that the D.C. Circuit misstated itself and said claims and defenses, citing Schneider, when Schneider only said the one, that doesn't make it good law. We're governed by what the Supreme Court said and held in Schneider, not by a misstatement by a lower court that's just an error, that's an apparent error, obvious error. You can't rest your case on an obvious error by an inferior court. Well, Your Honor, even assuming, as you say, that Schneider only applies to defenses because it only says defenses, again, this is an affirmative defense in this case. It's our defense to rise out of the contract. How can it be an affirmative defense out of the contract when it doesn't arise out of the contract? Because it arises out of the situation. It's our defense to what happened in this contract. No, but it doesn't arise out of this contract, right? No, it arises out of separate contracts in terms of our right of set-off, but the right of set-off is applicable to both contracts. And the right of set-off, I take it, would apply if Capital City owed back taxes, for example? Yes. So if Capital City's happened to be in arrears in its taxes, unbeknownst entirely to JGB, then JGB wouldn't really be able to collect anything. I mean, suppose the taxes were enormous. JGB wouldn't collect anything as a third-party beneficiary, in your theory, as I understand it. Right, that would be... Notwithstanding that they agreed to provide the hose in order to get payment. But you would say, well, when the government promised the payment, of course what it meant was payment of anything left after we run the set-off on the taxes. That's your position? That would be basically the same situation as here. It doesn't matter where... Excuse me? That's what worries me. I mean, it sounds like your position is not limited just to contract-related set-offs, much less this contract, but any contract, but any obligation that the government may have against the prime contractor would be, in effect, regardless of any interaction, short of, I guess, an actual dollar promise by the government to the third-party beneficiary would be chargeable against the third-party beneficiary. That's true, except that the third-party beneficiary has the ability, in their contract or whatever agreement they have, to say that the government doesn't have a right of set-off. JGB could easily have said, as part of this change in their remittance address, that the government waives its right of set-off, and then the government would have had to pay JGB. And JGB here is an experienced government contractor. They had several direct contracts with the government and they had several subcontracts with the government. They should have been aware of what the government's rights and defenses are pursuant to that contract. Wait a minute. What are you saying? That they waived the right to make the argument that they're making here? Entirely? That they just can't be heard to make that argument at all because they didn't make it below? No, I'm not saying that. Well, then I don't understand what you are saying. If you're not saying there's a waiver that precludes them from being heard on their principal argument, I don't understand what you are saying. What are you saying? They can argue that there was some sort of understanding in the contract that they were getting full payment. They're not precluded from making that argument. What we're arguing is that there was no such agreement between the parties that they were going to get full payment. And what I'm also saying, in addition to that, is that initially, when they entered into this agreement to change the writ man's address, they could have specifically said, either we're going to get full payment, specified full payment, or they could have said the government is required to waive their right of set-off as against us. And in that case, the government would have been required to pay them. And in addition to that, changing the contract. No, it wouldn't. The government would have just refused their suggestion to modify the contract. Well, if you win this case, every well-counseled company will insist, in order to produce the urgently needed hoses or whatever it is, on just such a clause. If you lose this case, it will turn out that the lawyers for this company were right, although they probably still would have preferred to have such a clause so as to avoid all this litigation cost. It just strikes me. I'm a little hard-pressed to know why the government is fighting in this case, where even if the promise wasn't explicit and the words full payment were not used, the findings of the trial court here are that everyone understood, both the government representatives and JGB, that JGB was going to get paid, by which everyone understood. I think it's fair to say not paid part of what they were owed, but all of what they were owed, in order to produce the urgently needed hoses. That was the understanding when this modification was made. And I'm kind of at a loss to know what the government sees as its long-term interest in a case such as this to try to take back, in effect, a large chunk of what it promised to a company like JGB. The government's interest in this case is that it would like to be able to exercise its right of set-off regardless of whether the contract has a third-party beneficiary or not. The government would like to be able to exercise against the prime contractor, which is who the government is involved with, their right of set-off, regardless of what's going on with subcontractors. The question was about the long-term interest of the government. Obviously, the short-term, you save some bucks in this case. But in the long-term, aren't you likely to deter lots of people from even being willing to participate in government contracts if they are going to have to worry that they might get paid only 20 cents on the dollar because of an unknown debt that they had no connection with at all? No, because that would only happen in the limited circumstances under which the subcontractor would be considered the third-party beneficiary, which is very rare. It was found in this case, and we're not disputing that. But usually the government has nothing to do with the subcontractor. The agreement is between the contractor and the subcontractor. It's regarding payment and all other issues. The government is only concerned about the contractor, the prime contractor. That was true in this case, and that would be true in any case. I don't understand why I would want to be a subcontractor if I'm going to be at risk of getting paid 20 cents on the dollar because of a debt unknown to me that I had nothing to do with. So I'm suggesting to you that if you were to win this case, it would actually hurt the government's long-term interest because it would deter lots of people who otherwise would have been willing to participate in government contracts from doing so. They would say, no thanks, we don't want to do business with the government because if you do business with the government, you take this horrible risk, you may not get paid. Again, that would only be true in the situation where if you were doing business as a third-party beneficiary to a prime contractor that was a contractor with the government. That is a very rare situation. This setup of the escrow account and all of that is very unusual. I don't think that it would deter, generally, people from being interested in being prime contractors. Certainly not, because there is no dispute already. I'm talking about people who would participate as subcontractors. If your prime's debts are going to be held against you as a subcontractor, even in certain circumstances, why would you ever want to be a subcontractor? If a prime came to you and said, how would you like to be a sub on my federal government contractor? I would say, no thanks, they might not pay me. Even though I produced every single item they wanted in perfect condition, on time, at the price offered, but they may not pay me, so I don't want to have anything to do with it. How is that in the government's interest? Well, if we were to prevail in this case, simply what would happen in that situation is that the government would agree with the subcontractor that they would not exercise their right of set-off against the subcontractor if there was a situation such as this where they were not getting paid by the contractor. How do I know up front if the government is later going to agree to waive what you claim is a right to a set-off? I have to decide at the beginning. I'm not going to know what will happen a year later. When I agree or don't agree to be a subcontractor on a federal contract, I've got to know what my risks are. You're telling me that, at least in a third-party beneficiary situation, my risks are that I might get paid nothing. Yes, that would be a risk, but you can, at the very beginning, when you become a subcontractor, you can address that risk assuming that the law is clear that there is a government's right to set-off against a third-party beneficiary when you're entering into that kind of relationship. Yes, but the problem is the contract law is designed for situations in which people don't spell it out, and we have a rule stated in the restatement in every single case that the general rule, the background principle against which contracts are written is that when there's a third-party beneficiary, there's no offset for claims that don't arise under the contract or constitute defenses under the contract. That's the background principle. You haven't cited a single authority, not a single one, which suggests there's a support for another rule. Well, again, the Schneider case combined with the cases that find that the government has a right of set-off in terms of intercontractual debt, those two cases combine. But there is no case that has ever been cited here, not a single one that has ever allowed a set-off arising from a claim under another contract. Not a single case. That is true. I agree there's no single case. What I'm saying is that there are cases, a number of cases that can be read together to show that there is such a right against a third-party beneficiary. Let me ask you, in terms of authority, would a contracting officer under contract A, such as this, have the authority to enter into a binding agreement on the part of the United States to waive set-off of an entirely separate contract or even of a tax obligation? As in this case, suppose JGB had said to Mrs. Matthews, Moore, I think it was the second. It said, OK, we will produce your hoses, but we will do so only if you waive the right to set-off. Is it clear that Mrs. Moore would have the authority to waive any of the government's potential claims against the general contractor? Or is Mrs. Moore's authority limited to that contract and could not extend to waiver of other claims against the subcontractor? That is not clear whether Mrs. Moore or whoever the individual contracting officer would be. Well, then, if that's true, if it's true that that's not clear, then it seems to me your ready solution to the problem may not be so ready, because if I'm Mr. Contractor and I go to Mrs. Moore, then I have to worry about what the government's later going to come in and say, well, Mrs. Moore wasn't authorized to waive the interest of other contracts or the IRS. The only way I can do that is presumably to guess as to where there might be other obligations, such as maybe the IRS. Who knows where else? And get the general counsel of all executive agencies to sign off on it? It's not practical, is it? Your Honor, I don't actually know whether the individual contracting officer would have the ability to waive all claims. But you're giving me concern by saying that it's possible that they wouldn't. Because it's certainly not unknown for the government to come up here and say that, well, this officer did that, but they didn't have the authority. And sometimes you're right about that. So if it isn't quite clear in your mind and you're not quite ready to say that Mrs. Moore could have waived all possible claims, including this one, had she been asked to and had she signed the waiver, then I'm troubled about your argument that the solution here is very easy to achieve and shame on JGB for not having gotten it. Well, Your Honor, I'm not saying that Mrs. Moore necessarily could not have waived all the rights. That's something I'm not sure of, and I'd be willing to submit a supplemental briefing on that if you would like. Could you explain one little point of curiosity for me? I see that the government was represented below by Ms. Bosk and Mr. Franklin White and that the briefs, both initial and reply brief, appear to have been principally authored by Ms. Nancy Kim. But you're Ms. Cohen, so how does it come to be that you're arguing this case? Ms. Bosk and Ms. Kim have both left our office and the case was transferred to me after Ms. Kim. Now, how about Mr. Franklin E. White? Where is he? He is the reviewer on this case, my supervisor. He would not be the one arguing, but he is still serving this case. Well, are assistant directors prohibited from arguing cases? I don't believe so, no. Well, he's the one most knowledgeable. He tried it below. I don't believe he participated in the trial. It was just Ms. Bosk. Well, he's listed at the beginning of Judge Miller's opinion as having been involved. He's listed as being on the briefs. Perhaps. It's not clear. Just one quick related question, and it sort of relates to the same point. It looks like there were two years went by between the decision of the Court of Federal Claims and your filing the appellant's brief. What happened in the middle of two years? That's a long time in a CFC case. There was a Rule 60 motion following the trial, which I think delayed the appeal. For how long? I don't know exactly how long. That's part of the cost. Were there requests by the government for additional time to file the opening brief, which was in fact filed November 20, 2006? I do not. Okay. Thank you. Thank you. Thank you very much. There being no appearance for oral argument by Mr. Joseph A. Camardo, the appellee's counsel, there's obviously no point in rebuttal argument. There's nothing to rebut as to argument, and so the case will be submitted. Thank you very much.